Rule 23 order filed
January 31, 2019.
Motion to publish granted
February 14, 2019.

2019 IL App (5th) 180267

NO. 5-18-0267

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| THERESA M. MILLER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Monroe County. |
| | ) | |
| v. | ) | No. 16-MR-58 |
| | ) | |
| ILLINOIS MUNICIPAL RETIREMENT FUND; ILLINOIS | ) | |
| MUNICIPAL RETIREMENT FUND BOARD OF | ) | |
| TRUSTEES; ILLINOIS MUNICIPAL RETIREMENT | ) | |
| FUND BENEFITS REVIEW COMMITTEE; NATALIE | ) | |
| COPPER, Trustee; GWEN HENRY, Trustee; TOM | ) | |
| KUEHNE, Trustee; DAVID MILLER, Trustee; SUE | ) | |
| STANISH, Trustee; SHARON U. THOMPSON, | ) | |
| Trustee; TRUDY WILLIAMS, Trustee; ALEX | ) | |
| WALLACE JR., Trustee; and LOUIS KOSIBA, | ) | |
| Executive Director, | ) | Honorable |
| | ) | Dennis B. Doyle, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court, with opinion.
Presiding Justice Overstreet and Justice Welch concurred in the judgment and opinion.

**OPINION**

¶ 1    The plaintiff, Theresa M. Miller, appeals the order of the circuit court of Monroe County that affirmed the decision of the defendants, listed above and hereinafter collectively referred to as IMRF, that the plaintiff is not eligible for total and permanent disability benefits from the Illinois Municipal Retirement Fund. For the following reasons, we affirm.

1

¶ 2                                    FACTS

¶ 3     On October 27, 2016, the plaintiff filed a complaint, in the circuit court of Monroe County, for administrative review of the final decision of IMRF that denied the plaintiff's claim for "total and permanent disability benefits." The complaint alleged that the IMRF decision adversely impacted the plaintiff because she was "unable to engage in any gainful activity because of a mental and physical impairment," and that the decision "was an abuse of discretion and not in accordance with the law." Attached to the complaint, as Exhibit 1, was the September 23, 2016, final decision of IMRF that denied her application for total and permanent disability benefits. Therein, IMRF informed the plaintiff that IMRF's decision was based upon attached medical records, and that "based on careful study of additional medical evidence and reports in our file, you are not totally and permanently disabled as defined by IMRF law." Also attached to the complaint were the minutes from the August 25, 2016, meeting of IMRF's Benefit Review Committee (BRC), which noted that the BRC "heard comments from Dr. Rao and read the vocational rehabilitation specialist report," and considered additional evidence. The minutes noted that the plaintiff was "an IMRF participant who originally applied for disability benefits based on a diagnosis of Lumbago, with lumbar strain, post laminectomy syndrome," but that "[a]fter reviewing the medical, education and work experience records" in the IMRF files, it was "the opinion of IMRF that [the plaintiff's] claimed conditions do not prevent her from being able to perform gainful activity," and that, accordingly, she was not eligible for total and permanent disability benefits under the Illinois Pension Code.

¶ 4     On November 28, 2016, the administrative record in this case was filed with the trial court. Of significance to the issues raised in this appeal, the record contains the findings of IMRF that, *inter alia*, (1) the plaintiff worked as a custodian for the Columbia school district on January

7, 2011, and on that date suffered an on-the-job injury that resulted in diagnoses of lumbago and lumbar strain; (2) on June 24, 2015, the plaintiff's application for total and permanent disability was referred to Dr. Noel Rao, who reviewed the plaintiff's medical records and opined that the plaintiff did not meet IMRF's definition of total and permanent disability; (3) the plaintiff thereafter submitted additional medical records to IMRF, including an "updated activity questionnaire," which Dr. Rao reviewed prior to again determining that the plaintiff was not eligible for total and permanent disability; and (4) support for Dr. Rao's opinion included the work-related ability and limitations assessment completed upon the plaintiff, which showed that "on a regular 8-hour work day, 5 days a week," she "could at one time, before requiring rest or an alternate position, sit for 4 hours, stand/walk for 1 hour," that she did not "have to lie down" or "elevate her legs," and that "[s]he could stand and walk for 3 hours" (although "she could require rest between standing and walking"), had the ability to "lift 0 to 5 pounds for 8 hours, 6 to 10 pounds 4 hours, 11 to 15 pounds 2 hours, 15 to 20 pounds 1 hour," had the ability to "push 0 to 5 pounds for 7 hours, 6 to 10 pounds 3 hours, 11 to 15 pounds 1 hour, 15 to 20 pounds 0 hours," had the ability to "pull 0 to 5 pounds 7 hours, 6 to 10 pounds 3 hours, 11 to 15 pounds 2 hours, 15 to 20 pounds 1 hour," and could reach her hands and arms in any direction for 4 hours, "handle for 8 hours *** finger for 8 hours *** feel for 8 hours," but "could not stoop, kneel or crouch." The findings also include that although the plaintiff's physician indicated that the plaintiff "has significant cognitive problems," Dr. Rao "did not notice any progress notes from [the plaintiff's] treating physician that she has any cognitive impairment," and that "her memory was intact," her "[r]easoning and judgment was intact," and the plaintiff was "fully oriented." The findings state that a "[r]eview of previous medical records also did not indicate any evidence

3

of dementia," and note that "medical conditions diagnosed after her termination date *** could not be considered in the determination of total and permanent disability."

¶ 5    Also included in the administrative record is a document dated May 16, 2016, and entitled "Hypothetical Labor Market Survey," which indicates that the plaintiff "has restrictions between sedentary and light duty for work purposes[,] *** can lift up to 20 lbs[,] and has been released to return to work with the ability to alternate positions." The survey listed eight occupations that "appear[ed] to be within the sedentary or light duty range and within the restrictions outlined by [the plaintiff's physicians]" and were available in the plaintiff's geographical area as of the date of the report. The report was created by rehabilitation specialist Teri Soyster. Extensive medical and occupational therapy records are contained within the administrative record as well, and will be discussed as warranted below.

¶ 6    On January 22, 2018, a hearing was held on the plaintiff's complaint for administrative review. Therein, counsel for the plaintiff conceded the plaintiff had "a very difficult standard of review to overcome *** in an administrative proceeding," but argued that the IMRF decision should be overturned because it was an abuse of discretion and because "there's evidence which they just either misinterpreted or didn't *** interpret correctly." Counsel took issue with IMRF's use of the "vocational review" in the record, contending that the reviewer "applied the wrong definitions of [the plaintiff's] capabilities in determining whether *** there's gainful employment available to her." Counsel also argued, *inter alia*, that the medical evidence did not support the IMRF decision. Counsel for IMRF, on the other hand, pointed out that because the plaintiff had "received the maximum allotment of temporary disability benefits," IMRF was required to determine if the plaintiff was eligible for total and permanent disability benefits, which she would be only if she met the IMRF definition of total and permanent disability.

4

Counsel contended that the medical, and vocational review, evidence support the IMRF decision that the plaintiff could still "achieve gainful employment." At the conclusion of the hearing, the circuit court took the matter under advisement.

¶ 7    On April 5, 2018, the circuit court entered the order presently on appeal. Therein, the court ruled that IMRF's factual determinations were "not found to be against the manifest weight of the evidence," were supported by the record, and that there was "sedentary employment available which [the plaintiff] is able to perform." The court also found "no record of any cognitive impairment at the time of termination." Accordingly, the court affirmed the IMRF decision. This timely appeal followed.

¶ 8                                    ANALYSIS

¶ 9    On appeal, the plaintiff contends IMRF erred in its determination that the plaintiff is not eligible for total and permanent disability benefits. Specifically, the plaintiff argues before this court that (1) Dr. Rao's reports and opinions "lack any reliable basis," which in turn renders IMRF's decision against the manifest weight of the evidence; (2) the vocational report "is insufficient to support denial of [the plaintiff's] claim," which again in turn renders IMRF's decision against the manifest weight of the evidence; and (3) IMRF should have considered the independent decision of the Social Security Administration that awarded the plaintiff disability status under federal law, and the failure to do so further renders IMRF's decision against the manifest weight of the evidence. In other words, the plaintiff posits that the manifest weight of the evidence standard of review is applicable to all of her contentions on appeal. IMRF agrees, and, based upon the legal principles discussed below, so do we.

¶ 10    In an administrative review proceeding such as this one, it is the function of this court to review the decision and reasoning of the administrative agency, here IMRF, rather than that of

the circuit court. See, *e.g.*, *Board of Education of Waukegan Community Unit School District 60 v. Illinois State Charter School Comm'n*, 2018 IL App (1st) 162084, ¶ 80. Our standard of review as we do so is dependent upon the nature of the challenge to the agency's decision. *Id*. If the challenge involves a pure question of law, our review is *de novo*. *Id*. If the challenge involves mixed questions of law and fact, such as the legal effect of a given set of facts, or whether uncontested facts satisfy a statutory standard, our review is under the clearly erroneous standard, which finds error only in situations where, although there is evidence to support the agency's decision, the court of review, on the basis of all of the evidence of record, is left with the definite and firm conviction that the agency has made a mistake. *Id*. Because any factual findings made by the agency "are held as *prima facie* true and correct" pursuant to section 3-110 of the Administrative Review Law (735 ILCS 5/3-110 (West 2016)), we will not disturb those factual findings unless we conclude the findings "are against the manifest weight of the evidence, which occurs only when 'the opposite conclusion is clearly evident.' " *Board of Education of Waukegan Community Unit School District 60*, 2018 IL App (1st) 162084, ¶ 80.

¶ 11    As noted above, the plaintiff first takes issue with IMRF's reliance on Dr. Rao's reports and opinions. In particular, the plaintiff claims that because Dr. Rao based his reports and opinions on the medical records of the plaintiff, and "never once met with, spoke[ ] to, or treated" the plaintiff, Dr. Rao's reports and opinions lacked a reliable basis and should not have been used to discount the opinions of the plaintiff's treating physicians that she was disabled and unable to engage in gainful employment. In support of this proposition, the plaintiff relies upon this court's decision in *Hadler v. Board of Trustees of the Illinois Municipal Retirement Fund*, 2018 IL App (2d) 170303. In *Hadler*, our colleagues in the Second District found an IMRF decision that denied total and permanent disability benefits to be against the manifest weight of

the evidence because it relied upon the reports and opinions of Dr. Rao that the plaintiff therein could engage in "some gainful activity," and on a Labor Market Survey report that concluded that there were jobs available at the sedentary-physical-demand level that the plaintiff therein could perform. *Id.* ¶¶ 12-13, 15. Our colleagues held that the decision's reliance on Dr. Rao was in error because Dr. Rao (1) "never explained the basis for his opinions," despite the fact his opinions "did not address [the plaintiff's] chronic pain, the fact that her pain medications clouded her senses, or her need to continually shift her position, elevate her foot, and lie down at unpredictable intervals"; (2) "offered no explanation as to how, with all the limitations set forth by the plaintiff's treating physicians, the plaintiff could perform any gainful activity"; and (3) "offered no reasons why the plaintiff's treating physicians' opinions should be discounted." *Id*. ¶ 30. Our colleagues found the Labor Market Survey report "insufficient" to support the decision because therein the case manager who authored the survey report " 'assumed' that the plaintiff could perform sedentary work" and based this assumption not on any meeting or conversation with the plaintiff but instead entirely upon the opinion of Dr. Rao. *Id*. ¶ 31. This was problematic because there was "no indication in the report that the case manager reviewed Dr. Rao's opinions or spoke with him." *Id*. Our colleagues also found the survey report insufficient because it did not consider the plaintiff's work limitations and omitted several limitations, "such as the plaintiff's attention and concentration issues, her need to lie down at unpredictable intervals, her need to have her feet elevated for prolonged sitting, and the fact that she would likely be absent from work more than three times per month." *Id*. Our colleagues noted that the other evidence cited to support the decision did not in fact do so. *Id*. ¶¶ 32-33. Our colleagues acknowledged the highly deferential "manifest weight of the evidence" standard of review (which, as discussed above, is also applicable in this case) but concluded that because the

7

decision in question rejected the opinions of three medical experts who examined and treated the plaintiff and instead relied upon the survey report-authoring case manager and Dr. Rao, "neither of whom had ever met the plaintiff," the decision was against the manifest weight of the evidence, in light of the fact that it was "undisputed that the plaintiff is in constant pain and is unable to sit, stand, or walk for any extended period." *Id.* ¶ 34. Our colleagues noted that although this court may not reweigh the evidence in a case such as this, we nevertheless "have an obligation to determine whether the Board's decision was 'just and reasonable in light of the evidence presented.' " (Internal quotation marks omitted.) *Id.* (quoting *Murbach v. Anderson*, 96 Ill. App. 3d 1015, 1018 (1981)).

¶ 12    In addition to taking issue with the reports and opinions of Dr. Rao, the plaintiff in this case also contends the vocational report relied upon by IMRF in the proceedings below "is insufficient to support denial of [the plaintiff's] claim," which again in turn renders IMRF's decision against the manifest weight of the evidence. As described above, rehabilitation specialist Teri Soyster created a "Hypothetical Labor Market Survey," which indicated that the plaintiff "has restrictions between sedentary and light duty for work purposes[,] *** can lift up to 20 lbs[,] and has been released to return to work with the ability to alternate positions." The survey listed eight occupations that "appear[ed] to be within the sedentary or light duty range and within the restrictions outlined by [the plaintiff's physicians]" and were available in the plaintiff's geographical area as of the date of the report. The plaintiff notes that Soyster, like Dr. Rao, never met personally with the plaintiff, and contends that Soyster's report contains "glaring and deeply concerning flaws," such as (1) on multiple occasions, referring to a nurse practitioner who once examined the plaintiff as a physician who performed surgery on her, and (2) incorrectly stating that the plaintiff had been released for light duty employment. With

8

respect to the latter point, the plaintiff contends that the restrictions and limitations noted in her medical records support the opinions of her treating physicians that she "is unable to engage in any gainful employment." The plaintiff invokes the job classifications utilized by the Social Security Administration, then points to case law from federal courts that she believes supports the idea that with her restrictions and limitations she could not perform what would be classified for federal purposes as light duty work or sedentary work.[1] She also notes that one of her treating physicians, Dr. Kirk, submitted a form to IMRF in 2015 which explained that the plaintiff "was unable to sit for more than four hours each work day," and that Dr. Kirk's form "legally establishes she is unable to engage in even sedentary work." She contends Soyster took the permanent lifting restriction of no more than 20 pounds, imposed by another of her treating physicians, Dr. Kennedy, in a 2013 order, and "incorrectly" used the restriction to show the plaintiff could perform light duty work. She again points to *Hadler* as support for her position. She contends that Soyster lists some potential positions in her report as "sedentary" when in fact they should be listed as "light duty" positions, which further undermines Soyster's credibility, and posits that Soyster improperly analyzed the plaintiff's case under "an earning power" standard, rather than the proper standard of whether the plaintiff is able to engage in any gainful activity. In addition to the alleged deficiencies in the reports and opinions of Dr. Rao, and Soyster's report, the plaintiff also claims that IMRF should have considered the independent decision of the Social Security Administration that awarded the plaintiff disability status under

_____

[1]The plaintiff has not presented an argument that this federal case law is controlling in an Illinois case reviewing an IMRF decision, and has not presented any authority in support of such a proposition. Accordingly, the plaintiff has forfeited consideration of such a claim. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (argument must contain the contentions of the appellant, the reasons therefor, and the citation of authorities; points not argued in an opening brief are forfeited and shall not be raised in the reply brief, in oral argument, or in a petition for a rehearing).

9

relevant federal law,[2] and that the failure to do so further renders IMRF's decision against the manifest weight of the evidence.

¶ 13    In response to all three arguments of the plaintiff, IMRF contends the decision rendered below is supported by the evidence, and that *Hadler* is "a narrowly tailored decision based upon the evidence in the record" that "should not be summarily applied to this case[,] which has substantially different evidence in the record." IMRF posits that in this case, the plaintiff's "physical abilities and limitations are largely undisputed," and therefore contends the salient question in this case is whether, with those abilities and limitations, she is capable of any gainful activity for employment purposes. IMRF argues that all relevant opinions and documentation were considered, and that therefore there is no basis for this court to reverse the IMRF decision. With regard to *Hadler*, IMRF claims that, unlike in that case, in this case IMRF "did not rely exclusively on the opinions of its medical and vocational consultants in making its final administrative decision," and that accordingly *Hadler* is inapposite. IMRF cites, as other sources relied upon by it in this case, the following: (1) statements and testimony from the plaintiff, which allowed her the opportunity to explain how her medical condition prevents her from performing any gainful activity, (2) statements from her former employer, (3) medical records from her treating physicians, as well as from Dr. Rao, and (4) Soyster's report. IMRF notes, in particular, its contention that the plaintiff's own medical records and treating physicians did not demonstrate that she is unable to perform any gainful activity, and notes as well that there is no reason in the record to doubt the reliability of these sources, even if one were to question the

_____

[2]Likewise, the plaintiff has presented no authority in support of the proposition that IMRF is required to follow, or even take into consideration, a decision of the Social Security Administration. Accordingly, the plaintiff has forfeited consideration of such a claim. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (argument must contain the contentions of the appellant, the reasons therefor, and the citation of authorities; points not argued in an opening brief are forfeited and shall not be raised in the reply brief, in oral argument, or in a petition for a rehearing). In any event, we are aware of no such requirement or of any legal authority supporting it.

reliability of Dr. Rao, and of Soyster's report. IMRF takes issue with the plaintiff's contention that she has never been released back to work, citing Dr. Kennedy's January 8, 2013, release of the plaintiff to work with a permanent 20-pound lifting restriction, as well as the September 30, 2015, assessment in which her treating physicians certified that she was capable of certain activities that demonstrate she is not unable to perform any gainful activity. IMRF also takes issue with the plaintiff's citation, in her opening brief, to portions of the Dictionary of Occupational Titles that were not part of the evidence below, and contends that if the plaintiff believed Soyster's report contained improper categorizations of some potential occupations, she should have called this to IMRF's attention below, rather than attempting to create an issue for the first time on appeal. Finally, IMRF takes issue with the plaintiff's reliance on federal disability case law, which IMRF points out does not control these proceedings, and with the plaintiff's claim that IMRF did not consider the decision of the Social Security Administration, pointing out that the decision was included in the administrative record before IMRF, and there is no indication in the record that the decision was not considered, to the extent it might have been relevant to the claim before IMRF.

¶ 14     In her reply brief, the plaintiff notes that the IMRF decision in this case, and its decision in *Hadler*, contained similar language, which she contends supports the idea that this court should follow *Hadler* and determine that the IMRF decision in this case was not just and reasonable in light of the evidence presented. She contends the evidence in this case was "unequivocal in supporting [her] contention that she was unable to do anything without pain to the point of [lying] down, and as a result also suffered limitations in concentration and memory." She further claims IMRF "relied exclusively on Dr. Rao's reports and [Soyster's] report," notes

that this court may take judicial notice of the Dictionary of Occupational Titles, and reiterates her contention that Soyster's report was fatally flawed and "riddled with errors."

¶ 15    As the parties to this appeal agree, and as the *Hadler* court pointed out, for the plaintiff to be eligible for total and permanent disability benefits from the Illinois Municipal Retirement Fund, she bears the burden of demonstrating that she is unable to engage in any gainful activity, which for purposes of a case such as this means she is incapable " 'of obtaining potential employment in any occupation or position under which [she] has the ability to earn at a minimum the monthly Social Security gainful work activity earnings limitation.' " *Hadler*, 2018 IL App (2d) 170303, ¶¶ 25-26 (quoting Illinois Municipal Retirement Fund Board Resolution No. 2016-02-08 (approved Feb. 26, 2016)). To make " 'this gainful activity determination, consideration shall be given to an applicant's education and work experience although the determination *** is not limited to employment in the field where the applicant had previously worked, studied or trained,' " and " 'the geographic availability of gainful activity shall not be considered.' " *Id.* ¶ 26 (quoting Illinois Municipal Retirement Fund Board Resolution No. 2016-02-08 (approved Feb. 26, 2016)). Moreover, " '[i]n certain cases, at the discretion of IMRF, a vocational expert may be used to make the determination of whether an applicant is unable to engage in any gainful activity' " as defined in the resolution. *Id.* (quoting Illinois Municipal Retirement Fund Board Resolution No. 2016-02-08 (approved Feb. 26, 2016)).

¶ 16    In this case, we first note that, the insinuations of the plaintiff notwithstanding, we conclude it would be improper to read the concerns raised by our colleagues in *Hadler* as a blanket indictment of the credibility of Dr. Rao that renders suspect the opinions given by him in all past, present, and future cases. *Hadler* simply says no such thing. That said, we nevertheless agree with IMRF that even if, for the sake of argument in light of the concerns expressed in

12

*Hadler*, Dr. Rao's reports and opinions, and the report of Soyster, are discounted entirely, there is still sufficient evidence in this case to support the IMRF decision to deny total and permanent disability benefits to the plaintiff. As noted above, the September 23, 2016, final decision of IMRF that denied the plaintiff's application for total and permanent disability benefits informed the plaintiff that IMRF's decision was based upon attached medical records, and that "based on careful study of additional medical evidence and reports in our file, you are not totally and permanently disabled as defined by IMRF law." The minutes from the August 25, 2016, meeting of IMRF's BRC noted that the BRC "heard comments from Dr. Rao and read the vocational rehabilitation specialist report," but also that it considered other evidence. In other words, as IMRF points out, the ultimate decision issued by IMRF in this case was made with the *guidance* of a medical consultant and a vocational expert, but was also "based on the substantial amount of documentation presented prior to the hearing." The BRC minutes specifically noted that "[a]fter reviewing the medical, education and work experience records" in the IMRF files, it was "the opinion of IMRF that [the plaintiff's] claimed conditions do not prevent her from being able to perform gainful activity."

¶ 17    As IMRF points out, those records include, *inter alia*, opinions of her treating physicians that support IMRF's decision. For example, Dr. Kennedy's December 11, 2012, notes indicate that although physical therapy was to continue for an additional four weeks—with a recheck scheduled for January 8, 2013—the plaintiff could "continue to work in a sedentary capacity in the interim." Dr. Kennedy's notes from the January 8, 2013 recheck—at which time he discharged the plaintiff from his care—include statements that the plaintiff was "generally doing better," with her strength "intact" and with "satisfactory" films of her lumbar spine, and also include Dr. Kennedy's opinion that the plaintiff had reached maximum medical improvement,

13

could be seen "on an as needed basis," and "should not lift over 20 pounds on a permanent basis." On page one of the physician's statement (IMRF Form 5.42A) completed by Dr. Kennedy on January 8, 2013, it specifically lists that date as the "last treatment date" for the plaintiff and states "patient released," and on page two it specifically lists January 8, 2013, as the day the plaintiff may return to work, with a permanent restriction prohibiting her from lifting more than 20 pounds.

¶ 18    Of even greater significance, the September 30, 2015, "Assessment of the Individual's Work-Related Abilities and Limitations" completed by the plaintiff's treatment providers at Progressive Family Care showed that she: (1) on a regular 8-hour work day, 5 days a week, could at one time, before requiring rest or an alternate position, sit for 4 hours and stand/walk for 1 hour; (2) did not have to lie down or elevate her legs at all during the 8-hour work day; (3) could stand/walk for 3 hours (although she could require rest between standing and walking); (4) had the ability to lift and/or carry 0 to 5 pounds for 8 hours, 6 to 10 pounds for 4 hours, 11 to 15 pounds for 2 hours, and 15 to 20 pounds for 1 hour; (5) had the ability to push 0 to 5 pounds for 7 hours, 6 to 10 pounds for 3 hours, 11 to 15 pounds for 1 hour, and 15 to 20 pounds for 0 hours; (6) had the ability to pull 0 to 5 pounds for 7 hours, 6 to 10 pounds for 3 hours, 11 to 15 pounds for 2 hours, and 15 to 20 pounds for 1 hour; and (7) could reach her hands and arms in any direction for 4 hours, handle for 8 hours, finger for 8 hours, feel for 8 hours, but could not stoop, kneel, or crouch. There is also support in the record for IMRF's conclusion that a "[r]eview of previous medical records also did not indicate any evidence of dementia," and that "medical conditions diagnosed after her termination date *** could not be considered in the determination of total and permanent disability." Additionally, we agree with IMRF that, with regard to the decision of the Social Security Administration in the plaintiff's case with it, that

14

decision was included in the administrative record before IMRF, and there is no indication in the record that the decision was not considered, to the extent it, arguably, might have been relevant to the claim before IMRF.

¶ 19    Based upon the foregoing, including IMRF's specific assertion of the assortment of records upon which it relied to reach its decision, we conclude that, unlike in *Hadler* and contrary to the plaintiff's unsupported assertion on appeal, in this case IMRF did not rely exclusively on the opinions of its own medical and vocational consultants in making its final administrative decision. Unlike the *Hadler* court, in this case we believe the IMRF decision was " 'just and reasonable in light of the evidence presented.' " (Internal quotation marks omitted.) *Hadler*, 2018 IL App (2d) 170303, ¶ 34 (quoting *Murbach*, 96 Ill. App. 3d at 1018). In part, that is because in this case—again unlike in *Hadler*—IMRF's consultants did not, without explanation, discard the assessments and records of the plaintiff's treatment providers. See *id*. ¶ 30. To the contrary, as explained above, the consultants' conclusions in this case are consistent with facts found in the plaintiff's treatment records. More importantly, based upon the totality of the evidence before us, described in detail above, we do not conclude the IMRF decision is against the manifest weight of the evidence, and we do not believe the opposite conclusion to that reached in the decision is clearly evident. See, *e.g.*, *Board of Education of Waukegan Community Unit School District 60*, 2018 IL App (1st) 162084, ¶ 80. As we noted earlier, and as we reiterate now, for the plaintiff to be eligible for the total and permanent disability benefits she sought from the Illinois Municipal Retirement Fund, she bore the burden of demonstrating that she was unable to engage in any gainful activity, which for purposes of a case such as this means proving she was incapable " 'of obtaining potential employment in any occupation or position under which [she had] the ability to earn at a minimum the monthly Social Security gainful work

15

activity earnings limitation.' " *Hadler*, 2018 IL App (2d) 170303, ¶¶ 25-26 (quoting Illinois Municipal Retirement Fund Board Resolution No. 2016-02-08 (approved Feb. 26, 2016)). We agree with IMRF that the plaintiff failed to carry her burden of proof. Therefore, we affirm.

¶ 20                                                    CONCLUSION

¶ 21    For the foregoing reasons, we affirm the order of the circuit court of Monroe County that affirmed the IMRF decision denying the plaintiff total and permanent disability benefits.


¶ 22    Affirmed.

2019 IL App (5th) 180267
NO. 5-18-0267
IN THE
APPELLATE COURT OF ILLINOIS
FIFTH DISTRICT

| | | |
|---|---|---|
| THERESA M. MILLER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Monroe County. |
| | ) | |
| v. | ) | No. 16-MR-58 |
| | ) | |
| ILLINOIS MUNICIPAL RETIREMENT FUND; ILLINOIS | ) | |
| MUNICIPAL RETIREMENT FUND BOARD OF | ) | |
| TRUSTEES; ILLINOIS MUNICIPAL RETIREMENT | ) | |
| FUND BENEFITS REVIEW COMMITTEE; NATALIE | ) | |
| COPPER, Trustee; GWEN HENRY, Trustee; TOM | ) | |
| KUEHNE, Trustee; DAVID MILLER, Trustee; SUE | ) | |
| STANISH, Trustee; SHARON U. THOMPSON, | ) | |
| Trustee; TRUDY WILLIAMS, Trustee; ALEX | ) | |
| WALLACE JR., Trustee; and LOUIS KOSIBA, | ) | |
| Executive Director, | ) | Honorable |
| | ) | Dennis B. Doyle, |
| Defendants-Appellees. | ) | Judge, presiding. |

**Rule 23 Order Filed:** January 31, 2019
**Motion to Publish Granted:** February 14, 2019
**Opinion Filed:** February 14, 2019

---

**Justices:** Honorable James R. Moore, J.

Honorable David K. Overstreet, P.J., and
Honorable Thomas M. Welch, J.,
Concur

---

**Attorney for Appellant**

Matthew R. Davis, Gallagher Davis, LLP, 2333 South Hanley Road, St. Louis, MO 63144

---

**Attorneys for Appellees**

Beth Janicki Clark, Vladimir Shuliga Jr., Illinois Municipal Retirement Fund, 2211 York Road, Suite 500, Oak Brook, IL 60523

---